THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LEONARD PRICE, Appellant.

Fourth Department, January 16, 1981

APPEARANCES OF COUNSEL

*Murray Grashow (Herbert Greenman* of counsel), for appellant.

*Edward C. Cosgrove, District Attorney (Timothy Harvey* of counsel), for respondent.

OPINION OF THE COURT

CALLAHAN, J.

Shortly after midnight on January 12, 1979, two males entered the Continental Airlines office at the Los Angeles Airport. With no prior reservations, one of them, displaying a large amount of cash, purchased two one-way tickets to Buffalo, New York on a flight scheduled to depart in 10 minutes. A veteran Los Angeles detective assigned to the airport detail observed them as they checked their baggage. Both men were sweating profusely, appeared to

be nervous, and were constantly looking around the airport area. After the men departed the ticket area, police officers brought a dog named "Frog", trained in the detection of controlled substances, into the baggage area of Continental Airlines. The dog reacted positively to the presence of controlled substances within the suitcases which had been checked through by the two men.

At approximately 3:45 A.M., the Los Angeles Detective Bureau contacted New York State Police with a description of the suspects and their luggage. New York authorities were fully apprised of what occurred at the Los Angeles Airport as well as the reliability of the dog who had received over 400 hours of training in the detection of controlled substances including marihuana, heroin and cocaine. The dog "Frog" was rated 100% efficient by the Los Angeles Police Department in that he had located 705 exhibits out of 705 opportunities. Utilizing this information, an application was made for a search warrant to search these suitcases for heroin, cocaine and marihuana. A search warrant was issued by a New York Supreme Court Justice which was executed upon defendant's arrival at the Buffalo International Airport. A search of their luggage revealed substantial quantities of heroin. Both defendant and his friend were placed under arrest.

Defendant was subsequently indicted and charged with criminal possession of a controlled substance in the first degree (Penal Law, § 220.21, subd 1; § 20.00) and criminally using drug paraphernalia in the second degree (Penal Law, § 220.50, subd 1; § 20.00). Subsequent to his arraignment, defendant brought an omnibus motion which included, *inter alia*, a motion pursuant to CPL 710.20 to controvert the search warrant and suppress the physical evidence on the ground that there was no probable cause to use a dog to conduct a "sniff" search of the defendant's suitcase as the basis for the issuance of the search warrant. In denying the motion, the trial court stated, "A person's right to expectations of privacy does not extend to the atmosphere generally, claims to which he holds in common with all others on this earth. His introduction of emanations into the same which may inculpate him in crime is at his own risk. The police are not constrained by the law or the

constitution from examination by any means of the air they too breathe, except upon their venturing without cause into a man's home, place of business, automobile or other place privately secured. Such did not occur here. The application and warrant are sufficient." Defendant then entered a plea of guilty to a reduced charge of criminal possession of a controlled substance in the second degree, a class A-II felony. This appeal seeks review of defendant's motion to controvert the search warrant and suppress the physical evidence seized as the result of the execution of said warrant.

A dog, "man's best friend", has traditionally been used by individuals and society in general, whether as an aide to the sightless or for security patrols. They have faithfully served as the watchdogs of the household, man's protectors, propulsion for dogsleds as well as being recognized as tracers of lost persons or articles (see 1 Wigmore, Evidence [3d ed], § 177, subd [2]). The historical precedent for utilizing the inherent qualities of canines is well chronicled. Dogs, endowed by nature with senses of smell and hearing superior to humans, have long been employed by police to detect crime and track criminals. Detection of contraband is a similar and related task which has led to the special training and successful use of dogs to assist exposing the criminal *(United States v Solis*, 536 F2d 880). In a proper case, the conduct of a properly trained dog standing alone can provide the necessary basis for probable cause *(Doe v Renfrow*, 475 F Supp 1012, 1026).

Whether the use of dogs trained in narcotic detection to sniff the exterior of a suitcase constitutes a "search" within the meaning of the Fourth Amendment to the United States Constitution has not previously been addressed by the New York State courts, although the issue has been analyzed in other jurisdictions. The great weight of Federal authority is that "sniff inspections" by dogs trained in narcotic detection do not constitute a "search" and therefore no probable cause is needed in order for that procedure to take place *(United States v Bronstein*, 521 F2d 459, cert den 424 US 918; *United States v Venema*, 563 F2d 1003; *United States v Solis*, 536 F2d 880, *supra; United States v Race*, 529 F2d 12; *United States v Fulero*, 498 F2d 748;

*United States v Painter*, 480 F Supp 282, 284; *Doe v Renfrow*, 475 F Supp 1012, *supra)*. Similar results have been reached in other cases *(State v Goodley*, 381 So 2d 1180 [Fla App]; *State v Wolohan*, 23 Wash App 813, 820; *State v 1969 Volkswagen Bus*, 120 Ariz 365; *People v Campbell*, 67 Ill 2d 308).

Defendant asserts that the use of a specially trained dog to sniff his luggage at the Los Angeles Airport was impermissible under California law and therefore New York authorities could not utilize such improper activity as a basis for obtaining a search warrant. In support of this proposition, he relies upon two California Court of Appeals cases, *People v Evans* (65 Cal App 3d 924) and *People v Williams* (51 Cal App 3d 346). In *Evans* the court found that indiscriminate sniffing of 40 mini-lockers by government canine drug detectors, revealing the presence of marihuana in two lockers rented by the defendants, violated the defendants' reasonable expectations of privacy in the lockers. In the *Williams* case, the California Court of Appeals held that Sheriff's deputies were trespassing when they entered an airline baggage room with a dog trained in detecting marihuana, proceeded to inspect baggage for contraband before it was loaded on the airline, opened the suitcase upon the dog's alert and without any warrant proceeded to arrest its owner. In analyzing the *Evans* decision we note that the California court emphasized that no reason existed to believe drugs would be found in any of the lockers. This fact distinguishes *Evans* from the other cases holding that dog-sniffs of luggage in airport baggage rooms or trailers parked in parking lots are not Fourth Amendment searches when the police have reasonably strong suspicion to believe, through informants' tips or otherwise, that contraband is to be found concealed in the baggage or trailer *(United States v Bronstein, supra; United States v Solis, supra)*.

Defendant's counsel urges that we adopt the limited applications of these two cases involving indiscriminate use of canines on sniffing expeditions where the court found no probable cause for their use. However, defendant's brief fails to note a most recent decision of the California Court of Appeals declaring that the use of a highly trained dog

to sniff, at the public baggage area, the luggage of an arriving air traveler whom police officers suspected was carrying hashish from Ft. Lauderdale to San Diego did not violate the Fourth Amendment *(People v Lester,* 101 Cal App 3d 613, review den —— US ——, 49 USLW 3282). In *Lester,* the dog's affirmative reaction to the luggage established probable cause for a warrant authorizing search of the bag for the drugs. It is readily apparent that while California does not authorize a general exploratory search through the use of dogs, it does sanction the use of drug-sniffing dogs where their use is in response to particular information supplied by informants or the surrounding circumstances.

Today, when the menace to public safety by the skyjacker and the passage of dangerous or hazardous freight compels *continuing scrutiny of passengers and their impedimenta,* we accept the absence of normal or justifiable expectation of privacy with respect to objects searched *(United States v Bronstein, supra* [suitcase]; *United States v Fulero,* 498 F2d 748, *supra* [footlocker]; *United States v Solis,* 536 F2d 880, *supra* [semitrailer]; *United States v Venema,* 563 F2d 1003, *supra* [rented locker]). This appears particularly significant in a case, such as the instant one, where a trained dog is used at an airport to sniff luggage since there can be no reasonable expectation of privacy when one transports baggage by plane *(United States v Bronstein,* 521 F2d 459, *supra; Rakas v Illinois,* 439 US 128; *Katz v United States,* 389 US 347). Canine assistance in pursuit of the criminal is in our view permissible and creates no constitutional issue of substance within the protection of the Fourth Amendment.

Inasmuch as we find that the California police officer did have probable cause for issuance of a search warrant based upon the actions of the trained dog "Frog" who had alerted them to the presence of drugs in defendant's luggage, the New York police were entitled to act on the strength of the telephone alert and to assume its reliability. In such circumstances the sender's knowledge is imputed to the receiver and when the New York police act they presumably possess the requisite probable cause to search *(People v Lypka,* 36 NY2d 210). Hence, the search warrant was

supported by probable cause and the trial court properly denied defendant's motion to controvert the warrant and suppress physical evidence seized as a result of its execution.

The other matters raised by the defendant have been considered and found to be without merit.

The judgment should be affirmed.

CARDAMONE, J. P., SIMONS, HANCOCK, JR., and MOULE, JJ., concur.

Judgment unanimously affirmed.